The fourth district appellate court of the state of Illinois has now convened the honorable Peter C. Kavanaugh presiding. Good morning we'll next call 4-22-0421 people the state of Illinois appellee versus Anthony L. Jackson appellant. Counsel for the appellant would you please state your full name for the record. This is Gregory G. Peterson at office of the state appellate defender. Thank you for the appellee. Very well thank you. Thank you your honor and may it please the court counsel. My name is Gregory Peterson. I work for the office of the state appellate defender and I'm here representing Anthony Jackson. Mr. Jackson was denied a fair trial. He was denied a fair sentencing hearing and as he Miranda was violated when the police employed this two-step technique despite the well claiming that he wasn't a suspect. Brady was violated because the trial court misunderstood that the prosecutor's Brady obligation runs even to evidence in possession of the police department and that sentencing his right to a fair sentencing was violated as he was essentially cross-examined during his own allocution. I'd be happy to answer this court's questions about any of the three issues but I would like to focus on the first issue the Miranda issue because I feel that. That's where I have some questions counsel too if I'm glad you want to start there. Would you share with us what factors do you feel demonstrate that the defendant was actually in custody when he was in the police station when we have to look here as far as the totality of the did have some information about Tim's murder and would come in that he was placed in an unlocked room. He had his phone with him. He had his shoes with him. He was given something to drink. I can't remember something to eat as well. The questioning was really not very probing certainly at the outset and it was he after just a couple minutes who volunteered that he and his uncle Tim the victim got into a knife fight before the murder happened. He wasn't in handcuffs. The police the detectives weren't wearing any weapons so how can this court look at all of those factors that the trial court had in front of it and say that there was a violation of Miranda here if he wasn't in custody. Well your honor I first would like to say we don't know for a fact that the room was unlocked. We have the police officer's testimony that he assumed it was unlocked but he didn't actually know. Mr. Jackson would have had no reason to believe that it was an interview that was conducted outside in the street. He was given the option of you can come in or we can come to you and I do concede that if the police officer had come to him he would not have been in custody but he wasn't merely at the front counter of the police station when he gave these statements. He was in a closed door interrogation room. The entire purpose of these sitting between him and a door that is closed that he does not know whether it's locked or not. He also knows that they've been looking for him so he he would have no reason and I understand that the would a reasonable person be free to leave is a separate inquiry than the factor test but he would have absolutely no reason to believe that he could leave at that moment. But from the factor test I would focus on the fact that this is an interior interview room that is multiple officers and crucially and this is something that distinguishes this case from every case cited by the state. He was not told that he was not under arrest. He was not told that he was free to leave and every case the state cites that factor is present. I don't think we could have raised this argument if he had been told that. All of the none of the handcuffs, none of the removing of his shoes or his belt combined with a and just a reminder Mr. Jackson you're free to leave at any moment. That's not custody. This is custody. This is an interior room and your honor was also concerned with the briefness and the speed of things. I think that turns less to custody and more to the interrogation aspect of things but turning excuse me but from your position that at any point in time that you take anyone into an interrogation room at a police station they are in custody? If you take the prime suspect of a murder into an interrogation room you close the door you start asking them about the case and you don't tell them that they're free to go? Yes your honor and that's a thing to remember here is that the police were after Mr. Jackson. We have in this record that the surveillance van that was following him around only gave up because he came into the police station. So we see this in this interrogation because an interrogation is not merely explicit questioning of course. It's words or conduct designed to incriminate that in uh to elicit an incriminating response. Well he was a person of interest right not not a suspect so that's a little bit different is it not? I would disagree frankly your honor. I think that's a distinguished a difference without a distinguish um without a distinction. I know what you're saying but at the same time it's the facts at the suppression hearing these police officers testified just a uh just a person of interest we don't know and then later when that became irrelevant to the suppression analysis and we moved to the guilt phase essentially of the proceedings they say he's our only suspect he's our number one suspect. That van was following him around for a reason and and your honors can different interrogations that are on that are in this record. Control Mackey's not treated the same way that Mr. Jackson is. They're they're clearly mining him for information about Mr. Jackson. So I I don't think that there's there's actually a substantive difference between person of interest and suspect here but more importantly we have on this record that he was not only a suspect. Now that matters and we see this interrogation from essentially from the two-step procedure from the way they the police department designed this procedure to get Mr. Jackson to talk before Miranda was read. He was waiting around in the station for a long period of time. Now there's another level there's another another level of this council and I'm sorry to interrupt and that is the police aren't required to stop their investigation. So when an individual walks off the street whether a person of interest or suspect and I do maintain there's a difference when a person walks off the street and voluntarily wants to provide information it's fine with the police they don't have a they don't have enough evidence to charge this case when he walks in as a person of interest. So my point is with the type of questioning which there's very little this is all voluntary information being provided to the police they're not required to not listen to it to make further warnings he's allowed to say everything he'd like to say. Your honor I think they did have enough information to that's part of the point as soon as the they got into it that statement was made time out stop everything Miranda's. They had already had the information though they were already following him around we know from the trial testimony he was our only suspect in a murder and and while they may not have been ready to take the case to trial immediately there Lieutenant Lane has said at trial this was our guy and he's saying that based on information from Detective Legaspi who was there in the room but to the degree that the the police aren't required to stop Mr. Jackson to to say no don't talk don't talk I fully agree with you there but if they are going to design these procedures to get him to incriminate himself as they did they're simply required to give Miranda first. I think that's an excellent argument had the police asked him to come in and to see him but when he walks in on his own volition after setting up the meeting through a phone call that that's a little that's a muddier more difficult argument. Your honor the police had asked to see him they they didn't tell him he'd been coming in in cuffs or anything like that but the I believe it's page 62 of the ROP the statement from the officer is we'd like to talk to you now that can be at our place or at yours admittedly but that's an indication of we'd like to ask you these questions with potentially incriminating answers they chose to do that in a custodial environment without Miranda. Excuse me that was after he reached out to them though and says I may have information I've heard my uncle has been killed I may have information about that and so to suggest that they say they want to hear that information from him or they're willing to have him come there or come to him couldn't that also be construed as as trying to provide convenience to him we'll come to you or come not if we set aside from the fact that he's the one making this inquiry they're not they didn't call him correct the first call is not from them that's that's true your honor but I think the who starts the contact between them shouldn't um shouldn't obscure the fact that by the time he makes these incriminating statements he's in a closed door station house interrogation he he's in um yes he has his shoes and yes he does even have his cell phone but I'd like to calls correct yes although I believe the calls are post Miranda but in this initial period pre-Miranda he's showing his cell phone to the officers in the room they're asking him follow-up questions about what they see so they're getting interrogatory value out of him having his phone they've designed this procedure to get the best results for them but what what you're saying they designed the procedure what in the record tells us that this was a designed procedure there wasn't any testimony about that in the motion to suppress in fact it was just the opposite was it not that this wasn't a you know we'll um question first and Miranda's uh later you're assuming that but I I maybe point to something that's in the record that I missed I would point your honor not to testimony at the suppression hearing taken alone because as the Illinois Supreme Court recognizes in Lopez that testimony is essentially never going to come out no police officer is going to say we always do this as a two-step but the conflict between the trial testimony and the suppression hearing testimony the dissimilation on the part of the officers about whether Mr. Jackson was a suspect when we know looking at the record as a whole that he was not only a suspect but their number one suspect we have the way they when they get the incriminating statement from him pre-Miranda they then use that statement to you have said this so we gotta read you your rights now and it's it's very casual specifically because they are trying to elicit this information from him there's there's no confession by the police officers at the suppression hearing that they avoided Miranda but there would never be such a confession by a police officer so what we are I'm sorry these aren't the facts that we have in Lopez either where the court did talk about question first and Miranda second I mean there the officers did bring the juvenile defendant into the station they did inform him directly that he was implicated in this crime by an accomplice and then they asked whether he was involved and then the defendant incriminated himself and then they advised him of Miranda that is totally different than what we've been talking about here and what happened here I agree that the facts of Lopez are more blatant than what happened here but at the same time again we do have this trial testimony from the police officers when it no longer mattered towards suppression essentially admitting what had happened admitting that and and that's a thing that we mentioned in our briefs here the fact that the cops the police officers excuse me were were sophisticated about their two-stage interrogation process should not change the fact that it is a two-stage interrogation process it is question first and it's some question first because we do see follow-up questions by these officers we do see them uh when Mr. Jackson's holding out his phone saying you don't expect us to believe that they're they're eliciting testimony from him they're eliciting facts from him but it was some questioning and some setting up the opportunity for him to talk in a custodial environment where Miranda should have applied so this two-stage interrogation I would focus your honor's attention on the fact that you have the entire record in front of you you're not limited to the testimony at the suppression hearing you are you have the entire record in front of you and you see this two-stage process I would like with your honor's permission to briefly turn to the Brady issue as well one one quick question before you do I guess my question is hypothetically if we determine or I is not in custody how did the police subvert Miranda by asking questions during a non-custodial interview they wouldn't they wouldn't your honor would the determination of custody would have to be made first before we got into the two-step the question first warn later yes your honor question first warn later is is only implicated if Miranda applies and Miranda does need custody and interrogation the Brady issue the the key fact I'd like to focus this court's attention on is the trial court's emphatic and incorrect statement of the law that the police are not an arm of the state's attorney's office heaven help us if that's the case that's that's flatly contradicted by the United States Supreme Court in Kyle's in Kyle's the court says and I'm quoting here the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case including the police so we we have here a misunderstanding of how Brady works and if the gas station in question had not turned the videos over to the police I agree that in that situation Brady would not be implicated the defense does have subpoena power but the defense's subpoena power does not absolve the prosecutor of the responsibility to look over all of the evidence that is available to state agents and that includes the police now with respect to this longer suppose a longer video what in the record suggests that it would have benefited the defendant at all let alone change the outcome of the trial and and we don't have this in the record do we it's not part of this longer video is not part of our record that's correct your honor and I I would say that if if your honors do not believe there is enough um ish information in this record about that video to decide that by the trial court this case um may end up again before the trial court whether this is a Miranda-based remand or a post-conviction petition it's it's important to clarify that the law says that the prosecutor is responsible for the conduct of the conduct of the police and that that in itself is the value that being said the defense theory of the case here was that Tim had gotten mixed up with some dangerous people that he was potentially involved in drugs and that something went wrong on the night in question at the end of the third video Tim is still on camera he is still talking to people at the gas station and if your honors watch that video it it does look like some sort of drug deal has been conducted Tim talks to the other car he goes back to his car fishes something out of the passenger side floor compartment comes back to the car there's some kind of exchange the idea that a drug deal was happening on the night in question supports Anthony's argument that he was arguing with Tim about Tim getting mixed up in trouble and wanted Tim to stay safe it also supports the argument that Tim had other things happening on the night in question because I I will acknowledge that the the knife fight and the murder happening so close in time was one of the most incriminating facts here and so if Tim is up to other things with other dangerous people you know these other people that we know are dangerous that matters and it matters to reasonable doubt even if it does not establish a clear alibi even if it does not establish a clear other perpetrator the reasonable probability standard if reasonable doubt becomes stronger then there is a reasonable doubt claim here and that that would be enough to find the Brady violation counsel on that on a quick question just for clarity to follow up with the question of justice Dinoff I know you indicated that we do not have the full gas station video the longer length I just want to be clear I don't believe that it was included in any of the post-trial matters is that correct that's correct your honor as best as I can tell from this record not anywhere in the record that that's right um and I I see that my time has expired so unless there are further questions I'll uh return for rebuttal I see none thank you Mr. Peterson Mr. McNeil may it please the court and counsel as for the before I forget as for the door being unlocked the video which we all had the benefit of seeing and hearing it showed the officers left the room and there was no delay in them leaving the room there was no knock for somebody to unlock the door there was no jingling of keys instead they just instantly open the door and leave clearly the totality of the circumstances show that that door was unlocked uh according to the the trial court was frankly surprised that this motion to suppress was even filed and I would I would submit that was a correct comment by the trial court this was a textbook proper interrogation started from defendant voluntarily calling the police choosing the police station as the person he went as the place they wanted to talk to the police voluntary voluntarily waiting in the lobby for an hour and then questioned only seven or eight minutes before admitting unprompted that he got into a knife fight with the victim earlier in the night there were no probing or accusatory questions to defendant by the police in those seven or eight minutes in fact the only the initial question of what do you want to talk to us about is about the only direct question they had the rest of them were clarifying questions about the timeline or who who defendant was talking about or where defendant was and when uh there was no lying or any implication defendant was accused of anything especially this murder defendant kept his phone his shoes his belt uh and defendant still unprompted told the police officers he got into a knife fight with the victim directly after that after his contact information he's mirandized the case law cited in in all the briefs shows that nothing anywhere near this situation has ever been held to be custody for Miranda purposes and as for excuse me how do you address the suggestion um that it there's a significant distinction as to whether or not he is a person of interest or he is the prime suspect in addressing those first i i don't know if i'm the one who's cut off can everyone still hear me it looks like i can hear you but i think justice yeah thank you justice lanard um can you repeat the question i i think we lost the back half of it thank you just addressing um what's been noted as the suggestion that there is a significant difference if it is a person of interest versus a prime suspect if you and how that um was addressed at the motion to suppress hearing versus uh later in the case as was suggested that that was stated at trial initially i would i would submit that the officer's subjective opinions don't matter at that point anyway it's the reason we're looking at it from defendant's perspective or a reasonable person in defendant's position clearly these questions that they asked in those seven or eight minutes nobody especially when the person was there of their own volition would assume that they were in custody i know council makes the point that he he wasn't told that he was under arrest because saying that at that point would have been absurd the person came down there to talk to them voluntarily um but i would also say that it's in it's absurd to expect the trial court to predict any later trial testimony at this motion to suppress hearing um uh the testimony didn't exist yet and the trial court made us credibility determinations based on legaspi and holst's testimony at that motion suppress hearing also i would say it's a mischaracterization to say that defendant was the prime suspect even looking at that trial testimony the only way that the words prime suspect were involved where was a leading question by defense counsel to lieutenant lane who was not one of the people that interviewed defendant anyway uh that his affirmative answer to that contrasted with i think it was legaspi's trial testimony where defense counsel tries to pin him down saying so he was the prime when when when did you know he was the prime suspect legaspi gives a answer like well i can't i i can't say exactly when he was a person of interest at that time but he was not the prime suspect so i think the totality of the circumstances um show even even if even if the trial court had the benefit of the trial testimony at this motion suppress hearing um there's nothing to suggest that there was uh any kind of ulterior motives based especially on the the actual questions the detectives give him in those seven or eight minutes in fact the as i already mentioned this is the i think the strongest suggestion that defendant wasn't a prime suspect at the time defendant waited in the lobby of the police station for an hour before these officers got around to questioning him assuming he was a sought after prime suspect the officers wouldn't have let him sit there for over an hour in the lobby where he could have decided to i don't want to talk to these guys and left at any time the officers would have brought him back to the room immediately if he was this sought after prime suspect presumably and i think that's the strongest indication that defendant was simply a person of interest at that time um there was also no question first warn later technique obviously there were no specific incriminating questions or any questions that even could lead to an incriminating answer by defendant in those seven or eight minutes i think more importantly there was unrebutted testimony from these officers that there indeed was not a question first warn later technique there was nothing to contradict these officers testimony the video corroborated it and the trial court was in the best position to evaluate the credibility of all the witnesses including the detectives at that motion to suppress hearing and we were to find counsel that there was this technique that was used are the other requirements that lopez talks about met here that is a substantial break in time and content of the remainder of the statements as required by lopez in order to admit these other statements i don't see that that is part of what we are looking at here no there no i would agree i would agree your honor and of course the circumstances of lopez which are already talked about were in stark contrast to here i think they even i might be confusing the cases but i think they even lied about uh defendant's involvement in lopez and clearly asked him pointed questions about and that were designed to implicate him in this in the offense in lopez prior to his miranda warnings there was nothing like that here and of course lopez was also a juvenile and defendant here was had extensive experience with the criminal justice system so i would say that the trial court did not err in not only rejecting the motion to suppress but finding that the motion to suppress even being filed was uh pretty ridiculous in and of itself as for the brady argument this is based on complete speculation defendant failed to prove that this video even existed and of course failed to prove that it was exculpatory in any way and and failed to prove that any evidence was not provided to the defense in fact the trial court found as a matter of fact that the state gave the defense everything that it had this was a finding of fact so it's therefore entitled to manifest way to the evidence standard and this was not against the manifest way to the evidence but there the state's obligation goes further than that it's not just to give uh defense counsel everything they have if the police have something else and they don't have it then it's not the state's obligation to turn over to find out about it and get it well even assuming that is there's nothing in this record to suggest that this video existed and and brady only brady only if there's a brady violation it has to be material evidence and there's nothing to even i mean defendant admitted at at the post trial motion and and even in its brief that there's only a possibility that this might show the victim fighting with someone else and and um obviously that's the definition of speculation this was nothing but a fishing expedition and uh clearly there was no brady violation because this wasn't material and there was nothing to demonstrate that this video even existed um as for sentencing i would just say the trial court properly sentenced defendant um there what did not err and interrupting his statement of allocution because it was not a statement of allocution it was basically a de facto closing argument where defendant professed his innocence the trial court was not obligated to let defendant ramble on about the trial evidence and his innocence when he should have been apologizing or taking responsibility for his actions which is what a statement of allocution is for and um if this is simply an excessive sentence argument i would say that it was not abusive discretion defendant had an extensive criminal record with multiple violent felonies and the nature and circumstances of this murder i would say were the most enough that he had to go to the hospital and so defendant had many hours to let cooler heads prevail think about what he did um instead when the uncle gets out of the hospital he finishes a job goes murders him in cold blood uncle was unarmed it's unprovoked as the video shows and uh the nature and circumstances were a significant aggravating factor here and this sentence was not an abusive discretion assuming it was an excessive sentence argument and if there are no more questions i would ask this court to affirm okay i see no further questions thank you mr mcneil mr pearson rebuttal for the appellant yes your honor thank you the the sentencing issue we'd like to stand on our briefs there but i i would especially point to the language from people versus stacy the the question of a maximum sentence should be the worst version of that offense this was not a natural life case it simply wasn't um sorry to interrupt but would you agree that that was within the possible sentencing range though are you suggesting that it's outside the sentencing range in any way no your honor the the firearm enhancement carries a to life at the end but if the court is going to impose the maximum sentence it should be doing that only in the worst cases this simply was not that also we don't have evidence that there was no motive we have the state failing to prove a motive but that's that's a different issue than proving that there was no motive that it was in cold blood anything like that turning to the second issue to the brady issue we do have evidence in this record that the video existed we have testimony that it was a longer section of video that was then cut down by the police officers we know that these longer videos were attached to the investigation reports not in this case but in the battery case we absolutely know it existed i'd also like to mention the trial court's factual finding that the state gave the defense what the state had on the very next page of the transcript so this is 1029 and 1030 of the rop the court makes its statement that the police are not an arm of the state's attorney's office the the statement that the state gave the defense everything it had when the trial court says that the trial court is saying the prosecutor's office the state's attorney's office gave the defense everything that the prosecutor's office had we agree with that the prosecutor was required however to give everything that the state the government had and that includes as we know from kyle's versus whitney the things that the police had but returning to issue one the fact that mr jackson was allowed to stay in this waiting room for a long period of time does not indicate that he was not a suspect for one thing it indicates that the police wanted to give him time to wait and get ready to talk it's it's the exact feeling that i had while i was in the waiting room of the zoom before this argument you're you're ready to go and you're you're waiting also a reminder of what was happening outside the police station as mr jackson was inside it the surveillance van was no longer tracking him because he was inside the police station he was followed around by a surveillance van to the police station that indicates that he's a suspect so are you suggesting he was in custody once he was in the waiting room i i think so your honor but i don't think that's a question that this court needs to decide because custodial and only question this court needs to decide is was he in custody when the questioning began when the interrogation and a reminder that that includes not only the explicit questioning but the behavior designed to uh to elicit the responses began and at that moment he's in a room with a closed door and to the degree that the video later does not appear to show unlocked that's all happening post miranda mr jackson would have had no reason to believe that door wasn't locked two police officers in between you and a closed door at an interior interview room of a police department i think when i visit my clients in prison even though i'm there as a lawyer i still assume that i'm going to have to ask two or three people to leave the room where i talked to my client mr jackson's there with two police officers in between him and the door a surveillance key initiated the contact with the police at the very start but by the time he walked into the police station there was a van trailing him this is custody this is interrogation and the fact that these police officers were successful and in fact effective at avoiding miranda doesn't change the fact that they were required to give the miranda warnings when he was in custody and interrogation that's the violation right there and we'd we'd ask this court to remand so that the trial court can determine other than that first initial statement what after that is the fruits of the initial statement because there's a little bit of a fact intensive analysis that would have to happen there so we are asking for a remand so that the extent of what needs to be suppressed can be determined on the ground thank you your honors thank you counsel thank you both pardon me this court will take the matter under advisement and you now stand in recess